U.T.B., UNITED THIRD BRIDGE, INC., Individually and on behalf of its members, Samuel Lopez and Charles Calloway, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

LOCAL # 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, NEW YORK STATE AFL–CIO, Building and Construction Trades Council of Greater New York, N.Y.C. Central Labor Council, AFL–CIO, E.E.O.C., U. S. Department of Health, Education and Welfare, Office of Civil Rights, Region 2, O.S.H.A., National Labor Relations Board, Region 2, Secretary of the State of New York, New York State Division of Human Rights, New York State Department of Labor, New York State Department of Labor Industrial Board of Appeals, McNutt Electric Company, L. K. Comstock Electrical Company, Wade Electric Contracting Co. Inc., Lowy and Donnath, Inc., Thomas Van Arsdale, Raymond R. Corbett, Peter J. Brennan, Edward J. Cleary, Harry Van Arsdale, Jr., Winifred D. Morio, "John" Conrad, "John" Greenfield, Phillip Ross, Werner H. Kramarsky, Robert Chrony, James McCarren, Carmine Sciolto, Defendants.

No. 79 Civ. 4663.

United States District Court,
S. D. New York.

April 20, 1981.

Silvera, Brooks & Latimer, New York City, for plaintiffs; Colin A. Moore, New York City, of counsel.

Norman Rothfeld, New York City, for defendants Local No. 3, Intern. Broth. of Elec. Workers and Thomas Van Arsdale.

## OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

After a careful review of this Court's trial notes and an appraisal of the demeanor of the witnesses, the Court finds that the plaintiffs not only have failed to sustain their burden of proof but that the evidence preponderates heavily against each asserted claim.

This action centers about alleged discrimination against black and Puerto Rican members of Local # 3 of the International Brotherhood of Electrical Workers practiced by officials of the union in job placements and in failing to present grievances on behalf of the members. The action was commenced by two individual plaintiffs, Samuel Lopez of Puerto Rican origin and Charles Calloway, a black, both members of Local # 3, and by United Third Bridge, Inc. ("UTB"), an organization composed of blacks and persons of Puerto Rican origin, some of whom are alleged to be members of Local # 3. Whether such an organization is a legal entity appears in doubt but the factual disposition made herein makes it unnecessary to decide whether it has standing to join this action.

Plaintiffs, in their free-wheeling amended complaint, named 30 defendants including various state and federal agencies, their officials, various employers and Local # 3, charging a far-flung conspiracy to deprive plaintiffs of their constitutional rights in a variety of employment contexts. As a result of dismissals of the complaint on motions made by defendants or by reason of nonservice upon others, the case came to trial against only two defendants, Local # 3 and its business manager, Thomas Van Arsdale.

The amended complaint alleges claims under 42 U.S.C. §§ 1981 and 1983 (1976). Since no state action has been alleged or demonstrated, the § 1983 claim must fall. The pretrial order, signed by both parties, also asserts claims under Title VII of the Civil Rights Act of 1964.[1] At the conclusion of the trial, however, plaintiffs' counsel admitted that no claim under Title VII had been established. The sole evidence that a charge had been filed with the EEOC concerning the events at issue, as required by 42 U.S.C. § 2000e–5(e) (1976), was a determination by the EEOC dated January 2, 1977, introduced by defendants. The determination, based on a charge filed by Samuel Lopez against an employer, McNutt Electric Company, listed as a defendant herein, found no reasonable cause to believe that the charge filed was true and advised Lopez that he had ninety days from that date to commence a civil action in federal district court. Since this action was

1. 42 U.S.C. § 2000e–2 (1976).

not commenced until September 6, 1979, the jurisdictional prerequisites for a suit under Title VII have not been met.[2]

■ Plaintiffs' claim thus must be analyzed exclusively under § 1981. Unlike the showing of disproportionate impact that is sufficient to establish a claim under Title VII, a claimant under § 1981 must make a showing of racially discriminatory intent.[3]

The essence of plaintiffs' claims is that defendants intentionally discriminated against them by failing to press grievances filed after a series of allegedly wrongful terminations by employers. They also allege that employment assignments by the union have been discriminatory.

The bulk of the evidence adduced at trial centered about plaintiff Samuel Lopez. His employment record is one of a long series of terminations by various employers, often for insubordination, disruptive behavior, poor attendance, inefficiency, or interference with assigned shop stewards' duties, followed by requests upon the union for the commencement of arbitration proceedings which were considered but not acted upon. Many of these incidents preceded September 6, 1976, and thus are barred by the three-year statute of limitations applied to § 1981 actions brought in the State of New York.[4] A policy or practice of discrimination against any plaintiff that might have tolled the statute of limitations has not been established.[5]

■ As to the remainder of the incidents, the evidence adduced at trial established that in each instance Lopez appeared personally, accompanied by witnesses, before the union's grievance committee. No direct evidence has been presented that Lopez's complaints were not considered in good faith and acted upon fairly and impartially. Rather, Lopez seeks to sustain his charge of discriminatory treatment by the grievance committee upon the circumstantial fact that his charges were consistently found to be without merit. However, the circumstantial evidence compels a contrary conclusion. The regularity with which Lopez was terminated by employers from jobs which he obtained through the union compels the conclusion that these were brought about by Lopez's own conduct and behavior for reasons that justified the employers' actions. There is not the slightest evidence to support the claim that the assigned reason for his termination from a particular job was not in fact the real reason. His demeanor through the entire trial displayed an arrogant attitude similar to that alluded to by several employers as the cause for his dismissal. Lopez's attack upon the good faith reason for his termination from various jobs, followed in each instance by a charge of union discrimination, is belied by the testimony of Frank Lopez, his brother, called as a witness by him. Frank Lopez, a member of both UTC and Local # 3, testified that in this seasonal industry, he has held his current job for over two years. Upon this record, in the light of Samuel Lopez's discordant employment record, the determination of the grievance committee not to press his alleged grievances, cannot be said to be discriminatory or motivated by bad faith. An individual union member has no absolute right to have grievances taken to arbitration; a union breaches its duty of fair representation only if its denial to press a meritorious grievance is "arbitrary, dis-

2. See Alexander v. Gardner-Denver Co., 415 U.S. 37, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974).

3. Guardians Ass'n of the New York City Police Dep't, Inc. v. Civil Serv. Comm'n of the City of New York, 633 F.2d 232, 263–68 (2d Cir. 1980).

4. Leigh v. McGuire, 613 F.2d 380, 382–383 (2d Cir. 1979); Keyse v. California Texas Oil Corp., 590 F.2d 45, 47 (2d Cir. 1978); Cates v. Trans World Airlines, 561 F.2d 1064, 1067 n.4 (2d Cir. 1977); Romer v. Leary, 425 F.2d 186, 187 (2d Cir. 1970). Compare Seymore v. Reader's Di-

gest Ass'n, Inc., 493 F.Supp. 257, 266 (S.D.N.Y. 1980) with Theobald v. Botein, Hays, Sklar & Herzberg, 493 F.Supp. 1, 6 (S.D.N.Y.1979).

5. See Association Against Discrimination in Employment, Inc. v. City of Bridgeport, 647 F.2d 256 at 274–75 (2d Cir. 1981). Guardians Ass'n of the New York City Police Dep't, Inc. v. Civil Serv. Comm'n of the City of New York, 633 F.2d 232, 249–51 (2d Cir. 1980); Acha v. Beame, 570 F.2d 57, 65 (2d Cir. 1978).
Acha v. Beame, 570 F.2d 57, 65 (2d Cir. 1978).

criminatory, or in bad faith."[6] There was not the slightest evidence to impugn the good faith of the employers who, in each instance of termination, specified the reason therefor. Discriminatory treatment cannot reasonably be inferred.[7]

Charles Calloway, the other named plaintiff, also testified to several incidents when the union failed to contest allegedly wrongful discharges of him. Calloway testified that he had been terminated for his weekly Friday afternoon attendance of Black Muslim services, but admitted that he had not been penalized for such observances since at least the beginning of 1976. All prior claims are barred by the statute of limitations. With respect to the remainder of Calloway's charges of wrongful termination by various employers, there was ample basis to support the union's position that those claims were without merit. Calloway claims that this discharge for absenteeism by Wade Electric Company in November 1976 shortly after he, allegedly with permission, had taken a day off to observe Black Solidarity Day was in retaliation for his observance of that day. In light of Calloway's history of excessive tardiness and absenteeism, often without permission, as documented by a series of employment termination reports completed by Calloway's past employers, the union reasonably could have discredited Calloway's claim that the observance had been authorized by Wade.

In a subsequent dispute with another employer, Lowy & Donnath, Inc., over an admitted overpayment to him, Calloway resisted returning the overpayment because of the Christmas holiday season. However, it does not appear that there is any question but that the return of the overpayment was due to the employer, and thus Calloway failed to show that the union had ignored a reasonably meritorious claim. Calloway also contested a termination by an employer in Sioux City, Iowa after a dispute over time taken off by Calloway. However,

there is ample evidence to support the union finding in light of Calloway's spotty past attendance record and the fact that two fellow black employees sent to Sioux City with Calloway, at a time of lack of work in the New York area, remained on the Sioux City jobs for lengthy periods of time. None of these incidents suggests that the union's failure to press Calloway's grievances was motivated even in part by racial discrimination. Finally, the meager statistical survey conducted by Calloway of six random acquaintances concerning the length of their unemployed periods is of no significance and does not establish the inference of racial discrimination in job assignment by the union that Calloway seeks to draw from it.

John Rodriguez, a UTB member, testified to being discharged for having brought the wrong tools to the job site when the instructions regarding necessary tools had been vague. However, while Rodriguez indicated that he had reported the termination to the union, as required in order to be reassigned to another job, he did not testify to notifying the union of his desire to file a grievance concerning the discharge. No wrongful failure to pursue the grievance thus can be found, and no discriminatory treatment can be implied. Moreover, the union placed Rodriguez on another job several days later.

Complaints by two other UTB members, Gilbert and Frank Lopez, concerning discharges in 1969 and 1974, are clearly barred by the statute of limitations. Their complaint of excessive unemployment within the statute of limitations period fails to establish their claim of discrimination in union assignment practices in light of testimony concerning the seasonal nature of electrical employment and the substantial periods of unemployment experienced by employees in the industry within the relevant time period.

---

6. *Guardians Ass'n of the New York City Police Dep't, Inc. v. Civil Serv. Comm'n of the City of New York*, 633 F.2d 232, 263–68 (2d Cir. 1980).

7. *Cf. Local Union No. 12, United Rubber, Cork, Linoleum & Plastic Workers of Amer. v. NLRB*, 368 F.2d 12, 17 (5th Cir. 1966), *cert. denied*, 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967).

The total picture that emerges is that Samuel Lopez has engaged in a feud with officials of the union, seeking to use his own derelictions in his various jobs and enlisting the aid of others, in an effort to sustain a claim under § 1981. His charges are without factual support. Plaintiffs, therefore, have failed to meet their burden of proof that Local # 3 or Thomas Van Arsdale discriminated against them on the basis of their race. Given this disposition, it is unnecessary for the Court to resolve the still unsettled issue in this Circuit of whether § 1981 applies to charges of discrimination against Puerto Ricans.[8]

Judgment may be entered for the defendants.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

---

8. *Guardians Ass'n of the New York City Police, Inc. v. Civil Serv. Comm'n of the City of New* York, 633 F.2d 232, 268 n.67 (2d Cir. 1980).