Wayne SMITH, Plaintiff,

v.

LOCAL UNION 28 SHEET METAL WORKERS, Art Moore, President, Joseph Casey, Recording Secretary, Murray Liebowitz, Administrator, Christine Ratliff, Administrator, C.W. Sheet Metal Company, Local Union 28 Joint Apprenticeship Committee, Defendants.

No. 92 Civ. 4414 (JES).

United States District Court, S.D. New York.

Feb. 28, 1995.

Wayne Smith, pro se.

Law Offices of William Rothberg (William Rothberg, of counsel), Brooklyn, NY, for defendants Murray Liebowitz, Christine Ratliff and Local Union 28 Joint Apprenticeship Committee.

Edmund P. D'Elia, P.C., New York City, for defendants Local Union 28 Sheet Metal Workers, Arthur Moore and Joseph P. Casey.

Jeffrey K. Hass, Eastchester, NY, for defendant CW Sheet Metal Co.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Wayne Smith, acting *pro se*,[1] brings the instant action against Sheet Metal Workers' Local Union No. 28 ("Local 28"), the Local Union 28 Joint Apprenticeship Committee (the "JAC"), Joseph Casey, Murray Liebowitz, Arthur Moore, Christine Ratliff and CW Sheet Metal Company, Inc. (collectively "defendants").[2] In this action, Smith asserts numerous claims based upon Title VII, 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. §§ 1981, 1985 and § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Defendants move for summary judgment on the merits and various procedural grounds. For the reasons that follow, defendants' motions for summary judgment are granted.

## BACKGROUND

The Sheet Metal & Air Conditioning Contractors Association of New York City, Inc. ("Contractors Association") negotiates collective bargaining agreements with Local 28 on behalf of individual contractors. Affidavit of Barbara Kranis Sworn to January 12, 1993 ("Kranis Aff.") ¶ 2–3. At all times pertinent to this action, defendant Joseph P. Casey was the Recording Secretary of Local 28 and a trustee of the JAC,[3] Arthur Moore was the President and Business Manager of Local 28, Christine Ratliff was the Administrator of the Local 28 Welfare Fund, Supplemental Unemployment Benefit Plan and Annuity Fund and defendant Murray Liebowitz was the Administrator of the JAC. Casey Aff. ¶¶ 2, 4; Affidavit of Christina Ratliff Sworn to January 12, 1994 ("Ratliff Aff.") ¶ 2; Affidavit of Murray Liebowitz Sworn to January 12, 1994 ("Liebowitz Aff.") ¶ 2.

In order to become a journeymen member of Local 28, an apprentice must successfully complete a four-year apprenticeship program, which is divided into eight terms of

---

1. On June 16, 1992 Smith commenced the instant action by filing a *pro se* complaint. On January 15, 1993 plaintiff filed an amended complaint through counsel, whom he later fired. By leave of the Court, Smith, again acting *pro se*, was allowed to file a second amended complaint.

2. In his second amended complaint, Smith misidentifies Local Union No. 28 Sheet Metal Workers as Sheet Metal Workers' Local Union No. 28, Arthur Moore as Art Moore and CW Sheet Metal Company as C.W. Sheet Metal Company.

3. In August 1993, Casey replaced Moore as the President and Business Manager of Local 28. Affidavit of Joseph P. Casey Sworn to January 14, 1994 ("Casey Aff.") ¶ 2.

equal length.[4] Casey Aff. ¶ 8. The apprentice program is administered by the JAC, which is governed by a Collective Bargaining Agreement (the "CBA") between Local 28, the Contractors Association and SMACNA of Long Island, Inc. *Id.* ¶ 5. In accordance with the CBA, the program is "under the supervision and control of a joint apprenticeship committee composed of six (6) members, three (3) of whom [are] selected by the Employer, and three (3) selected by the union." *Id.* ¶ 14, Exh. A, Art. VI, § 1.[5] The CBA also provides that the JAC shall formulate rules and regulations governing eligibility, registration, education, transfer, wages, hours and working conditions. *Id.* ¶ 16, Exh. A, Art. VI, § 1. During the course of the program, apprentices must attend a sheet metal school administered by the JAC, and the JAC refers apprentices to various employers for on the job training. *Id.* ¶¶ 8, 18, Exh. A, Art. VI, § 2. Upon completion of the program, apprentices become journeymen and solicit their own sheet metal work from employers. *Id.*

In February 1988, Smith was indentured as an apprentice in the apprenticeship program. The JAC's Statement of Facts Pursuant to Local Rule 3(g) ("JAC Rule 3(g) St.") ¶ 1; Liebowitz Aff. ¶ 4. On or about February 18, 1988, the JAC referred Smith to the New York Sheet Metal Corp. ("NYSM") for on the job training. JAC Rule 3(g) St. ¶ 3; Liebowitz Aff. ¶ 6. During his employment at NYSM, Smith complained to Liebowitz about certain confrontations with a fellow apprentice. Liebowitz Aff. ¶ 6. Although Liebowitz referred the fellow apprentice to another employer, Smith continued to encounter problems at NYSM. JAC Rule 3(g) St. ¶ 3; Liebowitz Aff. ¶ 6. In September 1988, NYSM discharged Smith. JAC Rule 3(g) St. ¶ 3; Liebowitz Aff. ¶ 6.

In September 1988, the JAC referred Smith to Phoenix Sheet Metal ("Phoenix"). JAC Rule 3(g) St. ¶ 5; Casey Aff. ¶ 44; Liebowitz Aff. ¶ 7. In October 1988, Smith was arrested and incarcerated for a period of two months because he had failed to maintain child support payments. JAC Rule 3(g) St. ¶ 5; Liebowitz Aff. ¶ 7; Deposition of Wayne Smith dated March 5, 1991 ("Smith Dep.") at 59. Upon his release in December 1988, Phoenix denied Smith reinstatement because it "did not have work for him." JAC Rule 3(g) St. ¶ 6; Casey Aff. ¶ 45; Liebowitz Aff. ¶ 7. An employer is fully entitled to terminate an apprentice based upon a lack of work. Local 28 Rule 3(g) St. at 6; Casey Aff. ¶ 45.

Thereafter, the JAC referred Smith to Penguin Sheet Metal ("Penguin"). JAC Rule 3(g) St. ¶ 8; Casey Aff. ¶ 46; Liebowitz Aff. ¶ 8. In October 1989, Thomas Howard, a principal of Penguin, informed Liebowitz that Smith refused to perform work as directed by the shop foreman and that Smith had quit. JAC Rule 3(g) St. ¶ 9; Liebowitz Aff. at ¶ 9. Thereafter, Liebowitz spoke with Smith, Mr. Howard and the shop foreman in order to further investigate the matter. JAC Rule 3(g) St. ¶ 9; Liebowitz Aff. ¶ 9. By letter dated October 30, 1989, Howard confirmed that Smith refused to work and that he had quit. Liebowitz Aff. ¶ 9, Exh. A. In the end, Liebowitz determined that Smith should be referred to another shop. JAC Rule 3(g) St. ¶ 9; Liebowitz Aff. ¶ 9.

In November 1989, the JAC referred Smith to CW Sheet Metal ("CWSM"). JAC Rule 3(g) St. ¶ 10; Liebowitz Aff. ¶ 10. In December 1989, Martin Palazzolo, a principal of CWSM, expressed dissatisfaction to Liebowitz concerning Smith's attitude towards other employees. JAC Rule 3(g) St. ¶ 10; Liebowitz Aff. ¶ 10. In response, Smith told Liebowitz that other employees were stealing his tools and otherwise treating him improperly. JAC Rule 3(g) St. ¶ 10; Liebowitz Aff. ¶ 10; Smith Dep. at 95–98. At the request of Liebowitz, a business agent investigated Smith's allegations but determined that they were unfounded. JAC Rule 3(g) St. ¶ 9. Liebowitz Aff. ¶ 10. By letter dated January 12, 1990, Palazzolo expressed continued dissatisfaction with Smith and indicated CWSM's desire to terminate his employment.

---

4. The apprentice program is comprised of approximately 67% minorities. Liebowitz Aff. ¶ 3.

5. At all times relevant herein, Casey was a trustee of the JAC, but Moore was not. Local 28's Statement of Facts Pursuant to Local Rule 3(g) ("Local 28 Rule 3(g) St.") at 3.

JAC Rule 3(g) St. ¶ 10; Liebowitz Aff. ¶ 10, Exh. B. Despite these extensive problems, the JAC merely reassigned Smith from the shop to the field. JAC Rule 3(g) St. ¶ 10; Liebowitz Aff. ¶ 10. On or about March 15, 1990, Smith suffered a work-related hand injury which caused him to miss approximately two months of work. JAC Rule 3(g) St. ¶ 10; Liebowitz Aff. ¶ 10; Smith Dep. 92–94. On or about May 10, 1990, CWSM discharged Smith. JAC Rule 3(g) St. ¶ 10; Liebowitz Aff. ¶ 10; Casey Aff. ¶ 55.

In February 1990, Smith applied for unemployment benefits to the Stabilization Agreement of the Sheet Metal Industry (the "SASMI Fund"), a jointly administered management and labor trust fund located in Alexandria, Virginia. Local 28 Rule 3(g) St. at 8; Casey Aff. ¶ 66. The SASMI Fund, an independent entity, receives contributions from participating employers based upon wage rates and hours worked. Local 28 Rule 3(g) St. at 8–9. In his application, Smith sought compensation for his unemployment following his discharge from Penguin. Smith Dep. at 31. By letter dated March 5, 1991, the SASMI trustees initially denied Smith unemployment benefits because he had not worked the required twelve hundred hours. *Id.* at 72–74. However, by letter dated April 17, 1991, the SASMI trustees denied Smith unemployment benefits based upon their determination that he had quit his job at Penguin.[6] Local 28's Memorandum of Law ("Local 28 Mem.") Exh. C; Casey Aff. ¶ 67; Smith Dep. at 33, 71, 73.

On May 31, 1990, the JAC held a meeting concerning Smith's inability to interact with others and to sustain employment. JAC Rule 3(g) St. ¶ 11; Liebowitz Aff. ¶ 11, Exh. C. At the meeting, Smith, Palazzolo and the JAC discussed the problems between Smith, his fellow apprentices and his various employers. JAC Rule 3(g) St. ¶ 11; Liebowitz Aff. ¶ 11, Exh. C. Based upon its investigation of the matter, the JAC referred Smith to the Members Assistance Program ("MAP"), an apprentice counseling and assistance program provided by the JAC. Second Amended Complaint ("SAC") ¶ 48, Exh. C; JAC Rule 3(g) St. ¶ 11; Liebowitz Aff. ¶ 11. The

JAC refers apprentices to MAP in order to deal with both personal and work-related problems. Local 28 Rule 3(g) St. at 7; Liebowitz Aff. ¶ 12. The program, which is provided free of charge, is non-disciplinary in nature and completely confidential. Local 28 Rule 3(g) St. at 7; Liebowitz Aff. ¶ 12.

In February 1992, notwithstanding the difficulties with his performance noted above, Smith still managed to graduate the eight-term apprenticeship program as scheduled and became a journeyman sheet metal worker. Casey Aff. ¶ 12; Liebowitz Aff. ¶ 5; Smith Dep. at 13.

## DISCUSSION

■ In the instant action, because Smith is acting *pro se,* the Court must construe his numerous claims liberally and deferentially. *See Washington v. New York City Board of Estimate,* 709 F.2d 792, 795 n. 3 (2d Cir.) (applying deferential standard to discrimination claims), *cert. denied,* 464 U.S. 1013, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983). Smith claims that he was not paid the correct amount of wages under the terms of the CBA, that annuity contributions and unemployment benefits were improperly withheld, and that such actions were the result of race discrimination. SAC ¶¶ 22, 25. Smith also claims that his termination by CWSM, his continual re-assignments and his referral to MAP were similarly undertaken for discriminatory purposes. *Id.* ¶¶ 40, 52, 53. Moreover, Smith claims that Local 28, Casey and Moore breached their duty of fair representation by failing to adequately address certain grievances. *Id.* ¶ 18.

In this case, affording Smith the benefit of the most generous interpretation of the undisputed facts, it is clear that the undisputed evidence does not support any rational inference of racial discrimination and that summary judgment, although often inappropriate in the employment discrimination context, *see, e.g., Gallo v. Prudential Residential Serv.,* 22 F.3d 1219, 1223–24 (2d Cir.1994), must be granted here.

---

**6.** An apprentice is not entitled to unilaterally quit a job. Casey Aff. ¶ 49.

## I. THE TITLE VII CLAIMS

■ In cases of alleged employment discrimination, the central inquiry is whether the employer has treated "some people less favorably than others because of their race, color, religion, sex, or national origin." *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). In order to "sharpen the inquiry into the elusive factual question of intentional discrimination," the Supreme Court has established an order and allocation of proof in Title VII cases alleging discriminatory treatment. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256 n. 8, 101 S.Ct. 1089, 1095 n. 8, 67 L.Ed.2d 207 (1981); *see also St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). Initially, the plaintiff must establish a *prima facie* case of racial discrimination, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), which creates a rebuttable presumption of unlawful discrimination. *See Burdine,* 450 U.S. at 253–55, 101 S.Ct. at 1093–95. A plaintiff may establish a *prima facie* claim by proving that (1) he is a member of a protected class; (2) he satisfactorily performed his duties; (3) defendant provided its employees with certain rights and privileges; and (4) he was denied these privileges. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 254 n. 6, 101 S.Ct. at 1094 n. 6; *Lopez v. Metropolitan Life Ins. Co.,* 930 F.2d 157, 161 (2d Cir.), *cert. denied,* 502 U.S. 880, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991).

■ If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. at 1824–25. Thereafter, the plaintiff must be afforded the opportunity to demonstrate by a preponderance of the evidence that the proffered reasons were a pretext for racial discrimination. *Id.* at 804, 93 S.Ct. at 1825. However, the ultimate burden of demonstrating unlawful discrimination remains at all times with the plaintiff. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94.

### A. The Apprenticeship Program

Relying upon his numerous reassignments and referral to MAP, Smith claims that defendants unlawfully prevented him from advancing in the apprenticeship program for discriminatory reasons. SAC ¶¶ 40, 51. However, these claims lack any colorable merit. Smith graduated the apprenticeship program as scheduled in February 1992. Liebowitz Aff. ¶ 5. Although Smith advanced only provisionally to the fifth term of his apprenticeship for failing a second-year competency test, any other apprentice would have been treated similarly in similar circumstances. SAC Exh. E., Liebowitz Aff. ¶ 5. Moreover, the JAC has referred many apprentices, both black and white, to MAP for counseling under similar circumstances. Local 28 Rule 3(g) St. at 7; Casey Aff. ¶ 57; Liebowitz Aff. ¶ 12. Therefore, the defendants have established that the JAC afforded Smith the same employment opportunities as any other apprentice during his apprenticeship. Casey Aff. ¶ 11.

Moreover, Smith has come forward with no evidence permitting any rational inference that he was treated differently, and certainly no evidence that any alleged disparity of treatment flowed from racial discrimination.[7]

### B. Payment of Wages

The implausibility of Smith's racial discrimination claims is well illustrated by his unsupported claims of wage and benefit discrimination. Smith claims that he was not paid the correct amount of wages under the terms of the CBA, and that such actions

---

7. Smith claims that CWSM did not provide him with adequate notice of termination in violation of the CBA, and that he was otherwise discharged for discriminatory reasons. SAC ¶¶ 40, 52. The CBA provides employers, such as CWSM, with full discretion in the employment of apprentices and does not require an advanced period of notification. Moreover, Smith has failed to come forward with any evidence permitting a rational inference that the repeated complaints about his job performance were merely a pretext for discrimination. *See, e.g., United Third Bridge, Inc. v. Local 3, Int'l Bhd. of Electrical Workers,* 512 F.Supp. 298, 300 (S.D.N.Y.1981) (regularity of transfers generates inference of employee misconduct).

were undertaken for discriminatory purposes. SAC ¶ 25. Under the governing CBA, however, an apprentice indentured in February 1988 should have received the following wage scales:

| Time Period | Term | Journeyman Rate | | Percentage | Appt. Rate |
|---|---|---|---|---|---|
| 2/88 - 7/88 | 1st | $23.33 | × | 30% | $ 7.00 |
| 8/88 - 1/89 | 2nd | $23.85 | × | 35% | $ 8.34 |
| 2/89 - 7/89 | 3rd | $24.32 | × | 40% | $ 9.99[8] |
| 8/89 - 1/90 | 4th | $24.87 | × | 45% | $11.19 |
| 2/90 - 7/90 | 5th | $25.32 | × | 50% | $12.66 |
| 8/90 - 1/91 | 6th | $26.16 | × | 55% | $14.39 |
| 2/91 - 7/91 | 7th | $26.71 | × | 60% | $16.03 |
| 8/91 - 1/92 | 8th | $27.16 | × | 65% | $19.01 |

Local 28 Rule 3(g) St. at 4; Casey Aff. ¶¶ 26, 32–33, Exhs. A, C; Kranis Aff. ¶¶ 4–5 (and exhibits appended thereto). In his second amended complaint, Smith maintains that he was paid at the following base wage per hour rate during his employment period:

| Time Period | Term | Base Wages Per Hour |
|---|---|---|
| 2/88 - 7/88 | 1st | $ 7.00 |
| 8/88 - 1/89 | 2nd | $ 8.34 |
| 2/89 - 7/89 | 3rd | $ 9.99 |
| 8/89 - 1/90 | 4th | $11.19 |
| 2/90 - 7/90 | 5th | $12.66 |

SAC ¶ 16; Smith Dep. at 28–29.

It is clear, therefore, that all apprentices, including Smith, were paid on an identical wage scale in accordance with the governing CBA. Local 28 Rule 3(g) St. at 4–5; Casey Aff. ¶¶ 30, 34. In fact, Smith has conceded that he had "no concrete knowledge" concerning the wages paid to other apprentices and that "most" apprentices were paid at the same rate.[9] Smith Dep. at 19–23, 102.

C. *Annuity Payments*

Smith also claims that defendants wrongfully appropriated certain annuity contributions during the third term of his apprenticeship between February 1989 and July 1989, and that such actions were undertaken for discriminatory purposes.[10] SAC ¶¶ 24–25.

In accordance with the CBA, however, the Local 28 membership may allocate a portion of the various fringe benefit funds to wages. Casey Aff. ¶ 38, Exh. A, Art. VI, § 6(b). Prior to the scheduled wage increase in February 1989, the apprenticeship class voted to allocate certain annuity contributions for the period of February 1989 through July 1989 to wages in order to have more disposable income. Local 28 Rule 3(g) St. at 5; Casey Aff. ¶ 40; Smith Dep. at 24–26. Thereafter, in or about July 1989, annuity contributions were again directed to apprentice annuity accounts. Casey Aff. ¶ 40.

■ As conceded by Smith, *no apprentice* received an annuity contribution for the third term of the apprenticeship. Smith Dep. at 25–26, 67. Accordingly, Smith has totally

8. The additional $ .262 reflected in the apprentice rate covering the third term results from the allocation of annuity contributions to wages in accordance with the decision of the Local 28 membership. Kranis Aff. ¶ 5.

9. Without offering evidentiary support, Smith alleges that one individual was paid on a different scale, but that individual was also an Afro–American male. Smith Dep. at 20, 23, 127, 155.

10. Smith also claims that Ratliff failed to produce requested annuity statements. Smith Dep. at 63–65. As demonstrated by the documentary evidence before the Court, however, Smith was in fact provided with those annuity statements. Ratliff Aff. ¶¶ 7–8, Exh. A.

failed to demonstrate that he was treated differently than similarly situated apprentices.[11]

## II. THE § 1981 CLAIMS

■ Smith also asserts the foregoing claims pursuant to 42 U.S.C. § 1981. Although § 1981 affords an additional federal remedy against employment discrimination, *see Johnson v. Railway Express Agency,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975), it provides "[n]o greater or lesser protection" than Title VII. *Carrion v. Yeshiva University,* 535 F.2d 722, 729 (2d Cir.1976). To that end, the *McDonnell Douglas* standard has also been held applicable to claims under § 1981, and the same proof may establish a violation of either statute. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989). Accordingly, because Smith has failed to set forth a *prima facie* case under Title VII, he has also failed to establish a *prima facie* case under § 1981. *See Woodbury v. New York City Transit Authority,* 832 F.2d 764, 768 n. 3 (2d Cir. 1987); *Knight v. Nassau County Civil Serv. Comm.,* 649 F.2d 157, 161 (2d Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 87 (1981) (citing *Personnel Administrator v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)).[12]

## III. THE STATUTE OF LIMITATIONS

■ In order to be timely, a Title VII claim must be filed within 90 days of receipt of a right-to-sue letter. 42 U.S.C. § 2000e–5(f)(1); *see also Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 149–50, 104 S.Ct. 1723, 1724–25, 80 L.Ed.2d 196 (1984);

*Cornwell v. Robinson,* 23 F.3d 694, 706 (2d Cir.1994). Although not a jurisdictional predicate, the failure to comply with the statutory filing period warrants a dismissal in the absence of a recognized equitable consideration. *See, e.g., Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 145–46 (2d Cir.1984) (dismissing *pro se* action filed 97 days after receipt); *Moscowitz v. Brown,* 850 F.Supp. 1185, 1191–92 (S.D.N.Y.1994) (dismissing *pro se* action filed 91 days after receipt).

■ In this case, the right-to-sue letters against Local 28 and CWSM are dated March 9, 1992. The JAC's Memorandum of Law ("JAC Mem.") Exh. B; Local 28 Mem. Exh. A. Under Rule 6(e) of the Federal Rules of Civil Procedure, the presumed date of receipt is March 12, 1992, or three days later. Fed.R.Civ.P. 6(e). In his second amended complaint, Smith claims that he received the right-to-sue letters on or about March 9, 1992. SAC ¶ 46. At his deposition, Smith testified that he received the letters on or about March 12 or March 13, 1992. Smith Dep. at 121–22, 153. Since the instant action was not commenced until June 16, 1992, or at least 95 days later under any view of the facts, the Title VII claims are time-barred as to all defendants.

## IV. THE ADMINISTRATIVE CHARGE

■ In this case, Smith filed administrative charges with the EEOC only against Local 28 and CWSM and received right-to-sue letters accordingly. JAC Mem. Exhs. A & B; Local 28 Mem. Exh. A; Smith Dep. at 55, 84, 134–35, 151. As a general rule, a plaintiff may maintain a civil action under Title VII only against defendants named in

---

11. Smith also claims that defendants unlawfully denied him unemployment benefits for discriminatory reasons. SAC ¶¶ 22–23. As conceded by Smith, however, SASMI is an independent legal entity. Smith Dep. at 70. Although SASMI, which is not a defendant here, may seek information concerning an apprentice from the JAC, any entitlement to benefits is determined by SASMI. Local 28 Rule 3(g) St. at 8; Casey Aff. ¶ 66. Thus, because Smith cannot demonstrate that *defendants* treated him differently than similarly situated apprentices, he has failed to establish a *prima facie* case of discrimination against *them* based upon SASMI's alleged discrimination.

12. Smith also asserts that defendants conspired to discriminate against him in violation of 42 U.S.C. § 1985. In *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979), however, the United States Supreme Court held that a private sector employee could not state a claim alleging a conspiracy to deprive him of equal protection of the laws based solely upon claims of employment discrimination. Accordingly, Smith's claims under § 1985(3) must be dismissed. *See, e.g., Ladson v. Ultra East Parking Corp.,* 853 F.Supp. 699, 704 (S.D.N.Y.1994).

an administrative charge filed with the EEOC or a qualified state agency. 42 U.S.C. § 2000e–5(f)(1); *see also Silver v. Mohasco Corp.,* 602 F.2d 1083, 1086 (2d Cir.1979). The JAC, Casey, Moore, Liebowitz and Ratliff therefore argue that the Title VII claims are procedurally barred because Smith failed to file an administrative charge against them.[13]

In *Johnson v. Palma,* 931 F.2d 203 (2d Cir.1991), however, the Second Circuit recognized an "identity of interest" exception to the general rule requiring a defendant to be named in an administrative charge. *Id.* at 209 (citations omitted). Under this exception, a plaintiff may maintain a Title VII action "against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Id.* In determining whether an identity of interest exists, the following factors should be considered:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of the named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 209–10 (citing *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977)).

None of these four factors support Smith here. First, as evidenced by the allegations in this case and the discovery conducted herein, Smith was unquestionably able to ascertain the role of the unnamed parties at the time of the administrative filings. Secondly, the respective interests of

Local 28, CWSM and the unnamed parties are not sufficiently similar for purposes of obtaining voluntary conciliation and compliance. Casey Aff. ¶¶ 19–22. Third, a broader EEOC investigation, prompted by the filing of charges against the unnamed parties, might have revealed that they were not involved in the alleged discrimination, resulting in a termination of charges against them. Lastly, Smith does not claim that any unnamed party indicated that its interest was represented by Local 28 or CWSM in connection with these allegations.

It follows that because Smith's failure to name the JAC, Casey, Moore, Liebowitz and Ratliff in the administrative charges does not fall within the identity of interest exception, these claims must be dismissed against them. *See, e.g., Ana v. NYS Bronx Surrogates Court,* 1994 WL 623351, at *2 (S.D.N.Y. 1994); *Moscowitz,* 850 F.Supp. at 1192; *Poulsen v. City of North Tonawanda,* 811 F.Supp. 884, 893 (W.D.N.Y.1993).

## V. THE § 301 CLAIMS

Smith claims that Local 28, Casey and Moore breached their duty of fair representation by failing to process his discharges from NYSM, Phoenix and Penguin, the alleged theft of his tools at CWSM, and his overall treatment by the JAC. SAC ¶¶ 18–19, 27–28, 56–58; Smith Dep. at 36–37, 39, 44, 46.

The six-month statute of limitations provided by § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) governs a claim that a union breached its duty of fair representation. *See DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 169–71, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1982); *Legutko v. Local 816, Int'l Bhd. of Teamsters,* 853 F.2d 1046, 1050–52 (2d Cir.1988). In the Second Circuit, it is well-established that "the claims against both the employer and the union begin to accrue 'no later than the time when plaintiff[ ] knew or reasonably should have known that such a breach had occurred.'" *Demchik v. General*

---

**13.** In one of the administrative charges, Smith named Local 28 but provided the address of the JAC. Local 28 Mem. Exh. A. In the charge,

however, Smith named only Local 28 and set forth allegations against only Local 28. *Id.*

*Motors Corp.*, 821 F.2d 102, 105 (2d Cir.1987) (quoting *King v. New York Tel. Co.*, 785 F.2d 31, 34 (2d Cir.1986) (quoting *Santos v. District Council of N.Y.C.*, 619 F.2d 963, 969 (2d Cir.1980)).

In or about October 1988, Smith complained about his treatment at NYSM and his discharge therefrom. Smith Dep. at 58. In or about December 1988, Smith complained about his experience with Phoenix. Smith Dep. at 58–60. In or about November 1989, Smith filed a complaint with the National Labor Relations Board ("NLRB") alleging, in essence, that Local 28 had breached the duty of fair representation with regard to his discharge from Penguin.[14] SAC ¶ 21; Smith Dep. at 38. In or about September 1990, Smith filed a complaint with the United States Department of Labor against Local 28 and CWSM concerning that period of employment. SAC ¶¶ 43–45. Moreover, Smith concedes that all of his claims relate to the first two years of his apprenticeship, or prior to February 1990. Smith Dep. at 37, 62, 136.

In view of the foregoing facts, the Court concludes that Smith knew, or should have known, whether Local 28, Casey and Moore had breached their duty of fair representation no later than September 1990, almost two years prior to the commencement of the instant action. Accordingly, his hybrid § 301 claims are barred by the six-month statute of limitations. *See, e.g., LaVigna v. WABC Television, Inc.*, 1993 WL 288206, at *1 (S.D.N.Y.1993); *Boyd v. Teamsters Local Union 553*, 589 F.Supp. 794, 796 (S.D.N.Y. 1984).

In any event, there is no evidence supporting any rational inference that Local 28, Casey or Moore breached a duty of fair representation. A union breaches its duty of fair representation only when its conduct is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967) (citations omitted). Indeed, it is not even clear that these defendants had any duty towards Smith with respect to grievances arising under the ap-

prenticeship program, since the JAC, rather than Local 28, Casey or Moore, is authorized to deal with problems between apprentices and their employers. Local 28 Rule 3(g) St. at 8. In any event, based upon its stated policy, the JAC repeatedly investigated Smith's work-related problems and, when necessary, referred him to another employer. Local 28 Rule 3(g) St. at 5; Casey Aff. ¶ 43; Liebowitz Aff. ¶ 6. In short, the JAC afforded Smith the same assistance afforded any other apprentice under similar circumstances. Local 28 Rule 3(g) St. at 8; Casey Aff. ¶¶ 58, 64.

### CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment shall be and hereby are granted. Accordingly, the Clerk of the Court is directed to enter appropriate judgment for defendants and close the above-captioned action.

It is **SO ORDERED.**

---

**14.** At his deposition, Smith testified that the NLRB charge was filed against Local 28, Moore and Casey. Smith Dep. at 39. The complaint was dismissed. *Id.* at 43.