Daral **CRITTENDON**

v.

**AMERICAN NATIONAL INSURANCE COMPANY and Douglas Bush.**

**Civil Action No. G–96–530.**

United States District Court, S.D. Texas, Galveston Division.

June 25, 1997.

Kathrine B. Schmitt, Houston, TX, for Daral Crittendon.

Linda Ottinger Headley, Ogletree Deakins Nash Smoak & Stewart, Houston, TX, for American Nat. Ins. Co.

Charles B. Frye, Law Office of Jim L. Peacock, Houston, TX, for Douglas Bush.

## *ORDER*

KENT, District Judge.

In this employment discrimination action, now before the Court are Defendants' Motions for Summary Judgment, dated March 7, 1997. For the reasons set forth below, the Motions are **GRANTED IN PART** and **DENIED IN PART.**

### I. BACKGROUND FACTS

Plaintiff filed this lawsuit on September 18, 1996, against American National Insurance Company (ANICO) and Defendant Bush alleging sexual harassment, sex discrimination, race discrimination, constructive discharge and retaliation prohibited by Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. Plaintiff also asserted state law claims of intentional infliction of emotional distress and negligence. On February 5, 1997, Plaintiff amended her Complaint to include the state law claim of battery.

Plaintiff began working for ANICO in July 1990, as an Associate Programmer. After initial training, Plaintiff was assigned to work in the Ordinary Agency department. The three senior programmers in the Ordinary

Agency section were Claire Armstrong, Douglas Bush and Oscar Dugey. Plaintiff's Complaint centers around the sexual harassment she allegedly suffered at the hands of Douglas Bush, as well as the conduct of ANICO in failing to prevent the occurrence and failing to take appropriate steps to remedy the problem after it was brought to management's attention.

Douglas Bush began working for ANICO in December 1976. During his employment at ANICO, and prior to the incidents involved in this lawsuit, ANICO found that Bush had sexually harassed three different female employees. The first harassment incident took place in the mid–1970's and Bush was disciplined for his actions. In 1987, Bush was again accused of sexually harassing two other female employees. ANICO conducted an investigation of these allegations, and again disciplined Bush for his behavior. He was suspended and placed on permanent probation as it related to any future harassment.[1]

However, it appears that Bush did not alter his behavior. Instead, Plaintiff alleges that he began to sexually harass her in the middle of 1991. Bush began discussing personal matters with Plaintiff when she went to him for technical information. He also began touching her hair, shoulder, and hands, and massaging her neck and back. Bush also made comments about her body parts on several occasions.[2] Plaintiff consistently asked Bush to stop touching her but he refused, increasing the frequency of his behavior until it was happening on a weekly basis. At one point, Bush told Plaintiff that although he looked upon Claire Armstrong as a daughter, he thought of Plaintiff as a woman.

In the fall of 1992, Walter Hawkins, Plaintiff's supervisor, determined that Plaintiff and Bush would be assigned to share an office.[3] At that point, Plaintiff complained to Hawkins that she did not want to share an office with Bush because he made her feel uncomfortable. Hawkins refused Plaintiff's request and made no investigation into Bush's activities. After sharing an office and enduring Bush's behavior on a more frequent basis, Plaintiff again complained to Hawkins two months later, this time specifically protesting Bush's touching and commenting on her body parts. Hawkins again refused to reassign Plaintiff to a different office.

Finally, in December 1992, Plaintiff complained to Hawkins' supervisor, Richard Theim, about Bush's conduct and Hawkins' refusal to assign her to another office. Theim then investigated the matter and suspended Bush for one month without pay, withheld his Christmas bonus, did not give him his scheduled January 1993 raise and moved him out of Plaintiff's office. However, Theim did not transfer either Bush or Plaintiff to another section. Bush returned to work on January 18, 1993.[4]

Plaintiff alleges that from January 1993 to November 5, 1993, she was retaliated against by ANICO for her complaints against Bush. Plaintiff alleges that this retaliation included: (1) changing her work assignments to less challenging projects; (2) removing her from a scheduled January "Focus" training class; (3) not allowing Plaintiff to transfer to another section; and (4) rating her performance in a lower category in January 1993. However, Plaintiff admits that she was assigned to work on a major project in August 1993, that she attended the "Focus" training class in late summer of 1993, and that she received a

---

1. ANICO clearly informed Bush that as part of the terms of his permanent probation he would be terminated immediately in the event of any future occurrences of harassment.

2. Bush would comment on whether the shape and size of Plaintiff's body parts were appropriate for her body size. For example, Bush made statements regarding Plaintiff's breasts and that he thought that they were too large. Bush made these types of comments approximately once every two weeks.

3. The programmers at ANICO regularly share offices. Both Defendant Bush and Plaintiff had shared offices with other programmers prior to the fall of 1992.

4. Plaintiff was allowed to take the day off with pay on January 18, 1993, to avoid being present when Bush returned from suspension and moved out of her office.

higher category evaluation, a promotion and a raise in July 1993.

After Bush returned to work in January 1993, Bush's harassing conduct ceased until September 1, 1993. On that day, Bush allegedly grabbed Plaintiff's buttocks and told her that they were getting bigger. Plaintiff responded to this incident by gathering her things and leaving the office for Labor Day weekend. Over the weekend Plaintiff attempted to commit suicide and was hospitalized. Plaintiff did not report back to work for some time, eventually tendering her resignation on November 4, 1993. At all times, Plaintiff refused to discuss the September 1, 1993, incident with ANICO management.

Plaintiff filed a charge of discrimination with the EEOC on November 1, 1993, raising race discrimination, sex discrimination/harassment and retaliation. Plaintiff amended her EEOC charge to add constructive discharge on May 24, 1994. On April 8, 1996, the EEOC issued to Plaintiff a determination and notice of right to sue as to all matters that the EEOC had found were not supported by the evidence, i.e., constructive discharge, retaliation, sex discrimination and race discrimination. The EEOC later issued a reasonable cause determination on June 24, 1996, concerning Plaintiff's allegations of sexual harassment. Plaintiff filed this lawsuit on September 18, 1996.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence

of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. STATE LAW CLAIMS

Defendants ANICO and Bush move for summary judgment as to Plaintiff's state law claims of intentional infliction of emotional distress, negligence and battery on the basis that these claims are barred by the statute of limitations.[5] In Texas, a two year statute of limitations is applied to all actions involving personal injury, including causes of action for intentional infliction of emotional distress, negligence and battery. TEX. CIV. PRAC. & REM. CODE § 16.003(a) (Vernon 1995). Accordingly, all instances of personal injury occurring more than two years prior to the filing of a lawsuit are barred by the statute of limitations.

In the present case, because the Plaintiff filed her lawsuit on September 18, 1996, all conduct occurring prior to September 18, 1994, is time-barred by the statute of limitations. Plaintiff submitted her letter of resignation to ANICO on November 4, 1993, more than two years and ten months before she filed this action. It is a practical impossibility for Plaintiff to have been exposed to any allegedly offensive conduct at the hands of ANICO or Defendant Bush after she left employment at the company. Therefore, she is necessarily incapable of identifying any conduct occurring on or after September 18,

---

5. Defendant Bush also moves for summary judgment as to all Title VII claims alleged against him on the basis that he is not a proper defendant under Title VII. In response to this argument, Plaintiff states that she does not bring claims against Bush in his individual capacity for violations of Title VII. Therefore, the Court will treat Defendant Bush's motion as to any Title VII claims as unopposed. Accordingly, to the extent that Plaintiff has made any claims under Title VII against Defendant Bush in his individual capacity, Defendant Bush's Motion for Summary Judgment is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE.**

1994, ten months after she left employment at ANICO.[6]

■ Plaintiff's inability to rely upon allegations of misconduct occurring after September 18, 1994, is not impacted by the pendency of her administrative action before the EEOC. It is well established in the Fifth circuit that a state statute of limitations is not tolled by the pendency of an individual's administrative complaint filed with the EEOC. *Dupree v. Hutchins Bros.*, 521 F.2d 236, 238 (5th Cir.1975), *citing Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). As the Supreme Court explained in *Johnson,* Congress did not intend Title VII proceedings to delay independent avenues of redress. *Johnson,* 421 U.S. at 461, 95 S.Ct. at 1720.

■ Plaintiff first argues that she entitled to have her federal and state claims resolved together under this Court's pendant jurisdiction pursuant 28 U.S.C. § 1367. Although it not disputed that the allegations that form the basis for Plaintiff's federal and state law claims against Defendants derive from a common nucleus of fact, "28 U.S.C. § 1367 is only a grant of jurisdiction over otherwise valid claims; it does not 'entitle' a plaintiff to bring a time-barred state law claim in federal court merely because she also has a federal claims arising out of the same facts." *Burnett v. Tyco Corp.*, 932 F.Supp. 1039, 1044 (W.D.Tenn.1996).

Plaintiff further contends that refusing to toll the statute of limitations on her state law causes of action would force Plaintiff to bring her state law claims in a separate action, causing inefficient duplication of the EEOC proceedings and any proceedings in federal court. However, the Supreme Court has acknowledged this fact, suggesting that, after filing the state court action, plaintiffs may simply ask the court to stay the judicial proceedings until the administrative and conciliation efforts are completed. *Johnson,* 421 U.S. at 465, 95 S.Ct. at 1723. The *Johnson* Court also acknowledged that it was not "unmindful" of the significant delays frequently associated with administrative proceedings. *Id.* 421 U.S. at 466 n. 11, 95 S.Ct. at 1723 n. 11.

Plaintiff attempts to distinguish the Supreme Court's holding in *Johnson* and the Fifth Circuit's holding in *Dupree* by pointing out that those cases held that a plaintiff's 42 U.S.C. § 1981 claim is not tolled by the pendency of a Title VII investigation by the EEOC when a plaintiff files suit alleging violations of both Title VII and 42 U.S.C. § 1981. However, the Supreme Court's and the Fifth Circuit's reasoning in *Johnson* and *Dupree,* respectively, controls the instant case as well. Plaintiff's state law claims, like a claim under 42 U.S.C. § 1981, provides the Plaintiff yet another independent avenue of redress outside of the administrative route provided by the EEOC. The *Johnson* Court reasoned that "the filing of a Title VII charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a § 1981 action." *Johnson,* 421 U.S. at 460, 95 S.Ct. at 1720. Similarly, the filing of a Title VII charge is not a prerequisite for the institution of a state law personal injury action alleging claims of intentional infliction of emotional distress, negligence and battery. The Plaintiff in this case clearly could have filed her state law claims at any time after her cause of action accrued.

For all of the above reasons, the Court finds that the Plaintiff failed to file her state law causes of action of action for intentional infliction of emotional distress, negligence and battery against Defendants ANICO and Bush within the applicable statute of limitations period. Accordingly, Defendants' Motions for Summary Judgment are **GRANT-**

---

**6.** Plaintiff admits in her deposition that the only conduct she complains of that occurred after November 4, 1993, was harassment of her after she left when ANICO tried to secure her testimony during Defendant Bush's lawsuit against ANICO. This conduct is not raised in Plaintiff's Complaint, nor would it form the basis of Plaintiff's claims of negligence and battery. Plaintiff's negligence claim centers on ANICO's decision to make Plaintiff share an office with Defendant Bush. Likewise, Plaintiff's battery claims centers upon allegations that Bush continually touched her in an offensive manner. Finally, Plaintiff testifies that although she was contacted less than ten times, she only spoke with ANICO's attorney on one occasion. Such sporadic and intermittent contact does not rise to the level of extreme and outrageous conduct necessary to sustain a claim of intentional infliction of emotional distress.

ED as to those claims. Plaintiff's state law claims of intentional infliction of emotional distress, negligence and battery are, therefore, **DISMISSED WITH PREJUDICE.**

## IV. SEXUAL HARASSMENT CLAIMS

Defendant ANICO seeks summary judgment of Plaintiff's sexual harassment claims on a number of grounds. First, ANICO argues that Plaintiff may not rely upon allegations of offensive conduct occurring prior to January 6, 1993, to prove sexual harassment because Plaintiff failed to file a charge of discrimination within 300 days of the allegedly offensive conduct. Under Title VII, an aggrieved individual must file a charge of discrimination with the EEOC "within three hundred days after the alleged unlawful employment practice occurred...." 42 U.S.C. § 2000e–5(e)(1). A civil action based upon employment discrimination under Title VII cannot be commenced unless the plaintiff has filed a charge within three hundred days of the challenged conduct and exhausted all administrative remedies under the statute as to the conduct.

In the instant case, Plaintiff filed her initial charge of discrimination with the EEOC alleging sexual harassment, sex discrimination, race discrimination and retaliation on November 1, 1993. Thus, only events occurring on or after January 6, 1993 are actionable under the statutory three hundred day period of Title VII. The only incident that Plaintiff alleges occurred on or after January 6, 1993, occurred on September 1, 1993, when Plaintiff alleges that Defendant Bush touched her buttocks and made a negative comment on her physical appearance. Defendant ANICO concludes that the Plaintiff may rely only on this incident in support of her sexual harassment claims; all other alleged events are time-barred. The Court respectfully disagrees.

■ The Fifth Circuit recognizes an equitable exception to the three hundred day statutory period that allows the Court to consider all relevant incidents, including those that would otherwise be time-barred, where such incidents constitute a continuing violation. *Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989). In order to sustain a claim under the continuing violation theory, the plaintiff must show that at least one incident of harassment occurred within the three hundred day period. *Id.* In this case, Plaintiff complains of an incident occurring on September 1, 1993, well within the statutory period.

■ The Plaintiff must demonstrate more than the mere fact that at least one act of harassment occurred within the statutory filing period. *Id.* A plaintiff must also "prove a series of continuous violations constituting an organized scheme leading to a present violation." *Berry v. Board of Supervisors,* 715 F.2d 971, 981 (5th Cir.1983), *cert. denied,* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986). To accomplish this, a plaintiff must establish: (i) that the one timely act involved the same type of discrimination; (ii) that the acts and events sought to be linked in a continuing violation theory were regular or recurring; and (iii) that the events had a degree or permanence that would alert the plaintiff that her rights had been violated. *Waltman,* 875 F.2d at 475. ANICO concedes in its motion that the Plaintiff has met the first element as the September 1, 1993, incident, where Bush touched the Plaintiff's buttocks and made a comment on her physical appearance, clearly amounts to the same type of discrimination that the Plaintiff alleges also occurred prior to the three hundred day filing period. The Court will address the second and third elements in turn.

■ ANICO argues that Plaintiff cannot meet the second element of regularity and recurrence of conduct because Plaintiff admits that Bush did not harass her from the time he returned from suspension in January 1993 until the incident on September 1, 1993. ANICO urges the Court to conclude that Bush's actions are discrete and sporadic and, therefore, insufficient to create a continuing violation. However, the Fifth Circuit has recognized that "[t]he fact that there were gaps between the specific incidents to which [the plaintiff] testified does not demonstrate a lack of continuity." *Id.* In fact, the Fifth Circuit found a continuing violation where Jewish doctors were excluded on numerous occasions over several years from partic-

ipation in an overseas medical services program through Baylor Medical School. *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 532 (5th Cir.1986). In the circumstances of this case, where Plaintiff alleges that Bush blatantly subjected her to the same type of harassment within nine months of the prior incidents, the Court is unwilling to make such a close factual determination without the assistance of a trier of fact. Therefore, the evidence presented in this case reveals at least a question of material fact on the issue of whether the acts and events Plaintiff complains of were "regular or recurring."

As to the final prong, Plaintiff must show that the permanence of the act should trigger an employee's awareness and duty to assert her rights. In this case, Plaintiff was allegedly subjected to a series of sexually harassing incidents at the hands of Bush. When she complained to management, they assured her that they would remedy the situation. However, Plaintiff was allegedly once again violated by Bush's offensive touching. Therefore, the Plaintiff has also established sufficient facts to demonstrate that a material issue of fact exists with respect to the third prong of the continuing violation analysis. Therefore, Plaintiff's allegations concerning any sexual harassment she suffered prior to January 6, 1993, may form the basis for her cause of action under Title VII.

■ ANICO next argues that it is entitled to summary judgment on the grounds that Plaintiff cannot establish her *prima facie* case for sexual harassment. The Fifth Circuit has defined the elements of proof under a hostile working environment sexual harassment claim as follows:

(1) the employee belongs to a protected group;

(2) the employee was subject to unwanted sexual harassment;

(3) the harassment complained of was based upon sex;

(4) the harassment complained of affected a term, condition or privilege of employment; and

(5) *respondeat superior*.

*Jones v. Flagship Int'l*, 793 F.2d 714, 721–22 (5th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). ANICO specifically challenges Plaintiff's ability to support the fourth and fifth elements of her case.

However, Plaintiff has in fact produced evidence to raise a material question of fact as to both of these elements. ANICO first argues that Plaintiff cannot demonstrate that the conduct that she complains of was "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). Given the facts described above, that argument does not even come close to passing the straight face test.[7] Moreover, the Plaintiff in this case has clearly produced enough evidence support a *prima facie* case for the consideration of a trier of fact on the issue of whether Bush's behavior created an abusive working environment.

ANICO next argues that the Plaintiff has not satisfied the fifth element of proof, *respondeat superior*, which requires that the employer "knew or should have known of the harassment in question and failed to take prompt remedial action." *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794–95 (5th Cir.1994). Again, the Court affirmatively finds that Plaintiff has met her burden of proof at this stage of the case. Given the facts of this case, it is clear to the Court that the Plaintiff has raised a material question of fact that must be resolved by a trier of fact as to the question of whether ANICO knew or should have known what was going on between Bush and the Plaintiff, and whether ANICO properly remediated the problem.

7. ANICO bases much if its argument on the assumption that any allegations of harassment prior to January 6, 1993, have been excluded from the Court's consideration. However, even on that basis, the Plaintiff has clearly raised a question of fact as to whether the grabbing of a female employee's buttocks in the office by a male co-worker is sufficiently severe to alter the conditions of her working environment. To suggest otherwise is simply preposterous.

Accordingly, the Defendant's Motion for Summary Judgment as to Plaintiff's sexual harassment claims is **DENIED.**

## V. REMAINING TITLE VII CLAIMS

 Defendant seeks summary judgment on Plaintiff's remaining Title VII claims on the basis that Plaintiff did not file her lawsuit within the statutorily prescribed time period. Title VII provides that if the EEOC dismisses a charge brought by a person aggrieved by unlawful employment practices or does not file a civil action based on the charge within a specified time period, the EEOC shall "notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e–5(f)(1). The Fifth Circuit has interpreted this ninety-day requirement as akin to a statute of limitations rather than as a jurisdictional prerequisite. *Espinoza v. Missouri Pacific R.R. Co.,* 754 F.2d 1247, 1248 n. 1 (5th Cir.1985). The ninety-day limitations period begins to run "on the date the EEOC right-to-sue letter is delivered to the offices of formally designated counsel or to the claimant." *Ringgold v. National Maintenance Corp.,* 796 F.2d 769, 770 (5th Cir.1986). The Fifth Circuit has taken a strict approach to calculating the ninety days and has held that a suit filed on January 6, 1984 was untimely when the right-to-sue letter was received on October 6, 1983, ninety-two days prior. *Id; see also Espinoza,* 754 F.2d at 1249 (affirming the dismissal of Title VII claims on the grounds that the suit was filed on August 3, 1983, ninety-two days after the right-to-sue letter was received on May 4, 1983). While the Court may feel that this calculation method is harsh and may be unfair to average plaintiffs who may think "ninety days" means three months, it is nonetheless bound by Fifth Circuit precedent and will apply it appropriately.

In this case, the EEOC issued a determination regarding Plaintiff's allegations which also included a notice of right to sue as to all allegations not supported by the evidence, *i.e.,* Plaintiff's sex discrimination, race discrimination, retaliation and constructive discharge claims, on April 8, 1996.[8] However, Plaintiff did not file suit until September 18, 1996, 162 days after the date of the EEOC's determination letter including the notice of right to sue. However, there is some dispute about when exactly Plaintiff received the letter in question. At the time the EEOC mailed the letter to Plaintiff in care of her post office box in LaMarque, Texas, Plaintiff was actually living in Charlotte, North Carolina. In her Response to Defendant's Motion for Summary Judgment, Plaintiff only admits that she first remembers seeing the April 8, 1996, letter at the end of summer 1996.

 Because a failure to comply with the ninety day requirement jeopardizes a plaintiff's ability to pursue a cause of action under Title VII, there has been much debate regarding the actions that trigger the ninety day period. The general rule has been stated as:

> the giving of notice to the claimant *at the address designated by him* suffices to start the ninety-day period unless the claimant, *through no fault of his own,* failed to receive the right-to-sue letter or unless, for some other equitable reason, the statute should be tolled until he actually receives notice.

*Espinoza,* 754 F.2d at 1250 (citations omitted) (emphasis added) The Court notes that the ninety-day requirement is not a jurisdictional prerequisite to suit but rather is a nonjurisdictional statutory precondition to suit. *Espinoza,* 754 F.2d at 1248 n. 1. As such, it may be subject to tolling and waiver. *Id.* The Supreme Court has identified several circumstances in which the ninety-day limitation may be equitably tolled, such as where a claimant has received inadequate notice, where a motion for appointment of counsel is pending, where the Court has led the plain-

---

8. The April 8, 1996, EEOC Determination Letter specifically states in bold type:

**The Charging Party may only pursue those allegations which are not supported by the evidence and do not establish a violation of the statute by filing suit against Respondent within 90 days of receipt of this letter. Otherwise Charging Party's right to sue will be lost.** Plaintiff's Depo. Ex. 36.

tiff to believe that he had done everything required of him, or where affirmative misconduct by the defendant has lulled plaintiff into inaction. *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725–26, 80 L.Ed.2d 196 (1984).

While courts will rely upon equitable principles to avoid the harsh impact of this rule under certain limited circumstances, equitable tolling is not available to claimants who do not file suit in a timely fashion because of factors that were clearly within their control. Failing to provide the EEOC with a current mailing address, thus jeopardizing the claimant's ability to receive the EEOC's notice of right-to-sue, represents one such circumstance that does not justify equitable tolling. *See Hill v. John Chezik Imports,* 869 F.2d 1122 (8th Cir.1989); *Hunter v. Stephenson Roofing, Inc.,* 790 F.2d 472 (6th Cir.1986); *St. Louis v. Alverno College,* 744 F.2d 1314 (7th Cir.1984); *Lewis v. Conners Steel Co.,* 673 F.2d 1240 (11th Cir.1982) (per curiam).

Where a plaintiff's delay in filing her lawsuit arises from her own negligence (failing to provide the EEOC with her current address), dismissal of the complaint is mandated. *St. Louis,* 744 F.2d at 1316. Before a plaintiff is entitled to the protection of equitable tolling principles, the plaintiff must first demonstrate that the delay in the receipt of the notice of right-to-sue was due to fortuitous circumstances or events beyond the plaintiff's control and that the plaintiff, through no fault of her own, failed to receive the notice. *Lewis,* 673 F.2d at 1243. It is "fair and reasonable for the plaintiff ... to assume the burden of advising the EEOC of address changes or to take other reasonable steps to ensure delivery of the notice to [the] current address." [9] *Id.* Placing this burden on the plaintiff also prevents a plaintiff from successfully manipulating the ninety-day limitations period to his or her benefit. *See Watts–Means v. Prince George's Family Crisis Center,* 7 F.3d 40, 42 (4th Cir.1993) (ob-

serving that where a plaintiff suspects that the EEOC has sent a notice of right-to-sue to a post office box, the plaintiff can simply avoid picking up the letter indefinitely, thereby tolling the ninety day limitations period as long as she chooses.)

This is not a case where Plaintiff received inadequate notice. Nor are any of the other extenuating circumstances present to justify tolling the limitations period. Plaintiff moved to Charlotte, North Carolina in December 1993, one month after she filed her charge of discrimination with the EEOC. The EEOC's determination letter was mailed more than two and one-half years later to the Plaintiff at the LaMarque post office box address she provided to the EEOC. Plaintiff continued to refer the EEOC to her LaMarque post office box address long after her relocation to North Carolina although she had an affirmative duty to provide the EEOC notice of any prolonged absence from that address so that she could be located. *St. Louis,* 744 F.2d at 1316; *Lewis,* 673 F.2d at 1242. Plaintiff failed to do so.

Instead, Plaintiff relies on a spoken agreement she claims that she made with someone at the EEOC where the EEOC would phone her in North Carolina to alert her that they were mailing an important document to her post office box. No statute, regulation or case holding indicates that Plaintiff was entitled to rely upon such an arrangement with the EEOC. The Plaintiff's testimony clearly indicates that it was within her capabilities to provide change of address information to the EEOC in light of her admission that she had informed the EEOC of her new telephone number in North Carolina. If Plaintiff chose to continue using the post office box address as the proper address for correspondence with the EEOC, then Plaintiff also assumed the responsibility of checking that post office box on a regular and reliable basis. *St. Louis,* 744 F.2d at 1316; *Lewis,* 673 F.2d at 1242. *See also Watts–Means,* 7 F.3d at 42 (stating that plaintiffs should not be permit-

---

9. This requirement was later codified in 29 C.F.R. § 1601.7(b) and clearly states that the claimant:

 has the responsibility to provide the Commission with notice of any change in address and

 with notice of any prolonged absence from the current address so that he or she can be located when necessary during the Commission's consideration of the charge.

 29 C.F.R. § 1601.7(b).

ted to manipulate statutes of limitation by simply refusing to pick up an EEOC notice).

Accordingly, as Plaintiff failed to file a timely complaint as to her allegations of sex discrimination, race discrimination, retaliation and constructive discharge claims, the Defendant's Motion for Summary Judgment is **GRANTED** as to those claims and they are **DISMISSED WITH PREJUDICE.**

## VI. CONCLUSION

For all of the reasons set forth above, Defendant Bush's Motion for Summary Judgment is **GRANTED.** All state law claims of intentional infliction of emotional distress, negligence and battery and all federal claims pursuant to Title VII against Defendant Bush are hereby **DISMISSED WITH PREJUDICE.** Defendant ANICO's Motion for Summary Judgment as to Plaintiff's state law claims of intentional infliction of distress, negligence and battery, as well as her federal claims of sex discrimination, race discrimination, retaliation, and constructive discharge is **GRANTED** and those claims are also **DISMISSED WITH PREJUDICE.** However, Defendant ANICO's Motion for Summary Judgment as to Plaintiff's claims of sexual harassment is **DENIED.** The case remains set for trial for a full adjudication of those remaining claims on the Court's July Docket. The Court, however, encourages the parties to take a realistic view toward the resolution of this case and to continue settlement discussions. All parties are **ORDERED** to bear their own costs incurred herein to date.

**IT IS SO ORDERED.**