# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 16, 2012

No. 11-10483

Lyle W. Cayce
Clerk

JOSE F. LUNA,

Plaintiff - Appellant

v.

CORRECTIONS CORPORATION OF AMERICA,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 6:09-CV-84

Before JOLLY, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

The plaintiff-appellant, Jose F. Luna, is a Mexican-American who was demoted from the position of prison warden to the position of assistant warden by the defendant-appellee, Corrections Corporation of America (CCA). Because Luna could not show that non-Mexican-American employees in "nearly identical circumstances" were treated more favorably by CCA, Luna failed to rebut CCA's proffered reasons for demoting him. We therefore AFFIRM the summary judgment dismissing his Title VII claims.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10483

I.

In 1997, Luna began his career with CCA as an assistant warden. In 1999, CCA promoted Luna to warden. In 2006, Luna applied for a promotion to serve as the warden of the Red Rock Correctional Center ("Red Rock"), a new, medium-security prison in Eloy, Arizona. In spite of the fact that Luna's superiors were aware that Luna had never previously served as the warden at a new facility and that new facilities had substantially more problems than established facilities, CCA selected Luna for the job. As warden of Red Rock, Luna was responsible for hiring and training his employees; for establishing security and operational procedures; and for setting up and delivering medical, food, commissary, and laundry services. He was also responsible for maintaining the facility's contracts with Alaska and Hawaii, the states that supplied Red Rock's inmate population.

Luna faced many challenges while "starting-up" Red Rock: CCA demanded that Luna open the facility ahead of schedule; the facility was not initially staffed with adequate security or medical personnel; CCA did not provide Red Rock's guards with weapons; and the facility had numerous water and sewage problems. These factors contributed to Luna's performance review as warden of Red Rock, which indicated that his job performance had declined from "exceeding requirements" to "meeting requirements."

Shortly after this performance review, in April 2007, the Hawaiian customer representative made a formal complaint about numerous security and staffing issues at Red Rock. The representative's complaint concluded with a threat that Hawaii would sue CCA for liquidated, contractual damages if the conditions at Red Rock did not improve. Three months later, the Hawaiian representative made a second security complaint, involving the sporadic, unintentional opening and closing of cell doors at Red Rock due to staff error.

No. 11-10483

Shortly thereafter, Alaska also started expressing displeasure with the performance of its contract with Red Rock. Alaska began monitoring its contract with Red Rock closely, sending a "contract monitor" to observe the facility on a regular basis. In the light of the complaints from Alaska and Hawaii, CCA management issued a Memo of Instruction to Luna, directing Luna to improve communication with the Alaskan and Hawaiian customers, to take steps to improve Red Rock's operational issues, to maintain better facility documentation, and to become more strategic in his management in the facility. A month later, Luna received a written reprimand from CCA management relating to the numerous security breaches at the facility.

On October 5, 2007, CCA received a letter from the Alaskan representative, which asserted that Red Rock was failing to comply with the contract; the letter raised issues relating to staffing, medical care services, security deficiencies, food quality, and facility management – some twenty-seven, separate concerns about the management of Red Rock.

Thereafter, CCA management conducted a follow-up security audit of Red Rock. CCA observed that Luna had failed to correct previously discussed security issues and failed to prevent new security lapses. Ultimately, CCA lost confidence in Luna's ability to communicate effectively with clients as well as to correct the security issues at Red Rock and to maintain a secure facility in the future. Altogether, CCA articulated forty-seven reasons why the company was dissatisfied with Luna's job performance at Red Rock. On the advice of CCA management, Luna requested a transfer to a different facility as an assistant warden.

Notwithstanding his acceptance of the transfer, Luna filed an EEOC charge in which he alleged that CCA had no legitimate reasons to demote him to assistant warden and that CCA had discriminated against him, based on his Mexican-American classification. In October 2009, after receiving his right to

3

sue notice from the EEOC, Luna filed a Title VII suit against CCA in the United States District Court for the Northern District of Texas.  In September 2010, CCA filed a motion for summary judgment arguing that Luna had failed to establish a prima facie case of discrimination or, in the alternative, that Luna had failed to show pretext for CCA's decision.

The district court granted CCA's motion for summary judgment.  The court held that although Luna had presented a prima facie case of discrimination, he had failed to demonstrate a genuine issue of material fact as to whether there was pretext involved in CCA's decision to transfer and demote Luna.  More specifically, the district court concluded that Luna was unable to show that the nature and the number of the offenses committed by white wardens were similar in nature and number to his offenses.

Luna now appeals the judgment of the district court, arguing that the eight white wardens he introduced as comparators are similarly situated to him, and that the district court therefore erred in determining that he did not adequately establish that CCA's reason for demoting him was pretextual.

## II.

Because Luna's discrimination case rests solely on circumstantial evidence, we must apply the oft-utilized *McDonnell Douglas* tripartite burden-shifting test.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of racial discrimination; then, the burden shifts to the defendant-employer to state a legitimate, non-discriminatory reason for the adverse employment action.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).  If the employer articulates a valid reason for the adverse employment action taken against the plaintiff, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose." *Id.* at 557.

No. 11-10483

Because Luna established a prima facie case of discrimination and CCA proffered legitimate reasons for demoting Luna, the next question is whether Luna has shown that CCA's reasons for demoting him are pretextual. A plaintiff may establish pretext "by showing that a discriminatory motive more likely motivated" his employer's decision, such as through evidence of disparate treatment, "or that [the employer's] explanation is unworthy of credence." *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589 (5th Cir.1998) (quotations and citations omitted), *vacated by* 169 F.3d 215 (1999), *reinstated in pertinent part by* 182 F.3d 333 (1999). To establish disparate treatment, a plaintiff must show, under the totality of the circumstances, that employees not in his or her protected class (comparators) received preferential treatment under "nearly identical" circumstances. *See Lee v. Kan. City So. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). We have held that a "totality of the circumstances" analysis can include the following considerations: "whether the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable histories." *Id.* at 260 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221-22 (5th Cir. 2001); *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir. 1985); *Okoye v. Univ. of Tex. Houston Health Sci.*, 245 F.3d 507, 514 (5th Cir. 2001)).

Luna argues that the eight wardens that he has introduced as comparators are similarly situated to him because: (1) the comparators had the same supervisors as Luna did; (2) CCA employed the comparators as wardens, therefore sharing the same job responsibilities as Luna; and (3) all of the comparators have violations in the broad categories of "security deficiencies" and "facility management."

The district court wrote a comprehensive opinion addressing all of these arguments, and we affirm for essentially the same reasons provided by the

district court.  Thus, we agree that Luna has not established that CCA's decision to demote him was discriminatory; we also agree that the eight, potential comparator wardens were not given preferential treatment in "nearly identical circumstances."  Even without considering the violations for which Luna claims he was not responsible, Luna had almost three times more employment violations than any of the wardens whom he argues are comparators.  Thus, Luna has not produced evidence of any employee who had a "nearly identical" employment history to his; and, as a result, he has failed to establish that CCA's reasons for demoting him constitute pretext for racial discrimination.  *See generally*, *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.").  The district court, therefore, did not err in granting summary judgment in favor of CCA.

## III.

In sum, because Luna failed to produce evidence showing that CCA's reasons for demoting him were pretextual, the district court properly granted summary judgment in favor of CCA.  The judgment of the district court is

AFFIRMED.