# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40061
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 2, 2015

Lyle W. Cayce
Clerk

YVETTE GARCIA,

      Plaintiff - Appellant

v.

PENSKE LOGISTICS, L.L.C.,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:13-CV-85

Before STEWART, Chief Judge, and PRADO, and HAYNES, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Yvette Garcia ("Garcia") appeals the district court's grant of summary judgment in favor of Defendant-Appellee Penske Logistics, LLC ("Penske") in this suit arising out of Garcia's discrimination and retaliation claims. For the reasons stated herein, we AFFIRM.

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40061

I.

Starting in 2002, Garcia worked as a Customer Service Representative for Penske[1] at its Mines Road distribution center ("the Mines Road facility") in Laredo, Texas.[2] Penske's sole customer from its Mines Road facility was Delphi Automotive Systems, LLC ("Delphi").[3]

During her tenure at Penske, Garcia suffered from several serious health problems. Starting in 2004, Garcia experienced chronic bronchitis and asthma, which were later diagnosed as chronic obstructive pulmonary disease, "COPD." Garcia also suffered from a bleeding disorder that manifested in 2005. These problems intensified over time, causing Garcia to request leave twenty-five times from 2006 to 2011 under the Family and Medical Leave Act ("FMLA"). Each request was granted by a supervisor at Penske. Penske did not discipline Garcia for taking sick leave or a leave of absence, and Garcia was not placed in a different job position at any point upon returning to Penske.

However, her frequent sick leave began to cause issues at work. Various co-workers complained to Garcia's facility manager, Hector Javier Garcia ("Mr. Garcia"), that Garcia would call in sick at the last minute and would be inaccessible during her absences from the office.[4] Similarly, when Garcia was offered and accepted a Sales Manager position in 2008 directly working with Delphi, Mr. Garcia noted to Delphi executive, Mark Heacox ("Heacox"), that he had concerns about Garcia because she was "sickly and cannot always come to

---

[1] Penske is a limited liability company that provides trucking and logistics services across the globe.

[2] Prior to her employment with Penske, Garcia was employed by another company, Ryder Systems, Inc. ("Ryder") beginning in 1989 at its Laredo, Texas facility. Penske acquired Ryder in 2002.

[3] Delphi is a subsidiary of General Motors that designs, engineers and manufactures automotive parts.

[4] Mr. Garcia would respond that Garcia was entitled by law to take leaves of absence under the FMLA.

work." On April 13, 2010, due to Garcia's continuing illness, Garcia's then supervisor, John Kalusniak, informed Garcia that she could work from home when she saw fit.

That same spring, Garcia began a romantic relationship with Heacox. Shortly thereafter, Garcia's co-workers began to complain to Delphi Investigations Manager Jarriel Koplin ("Koplin") that Garcia was abusing her relationship with Heacox. Specifically, Koplin received a complaint from a Delphi employee alleging that Heacox paid Garcia's expenses for lodging, vehicles, and meals using company funds, although these expenses were not business related. Delphi investigated the complaint and found irregularities concerning personal expenses charged to Heacox, but otherwise found no evidence of fraud. However, the investigation uncovered additional complaints against Garcia. One complaint detailed a telephone conversation where Garcia allegedly yelled at an employee, saying "you better do it or you will lose your job. I will let Mark Heacox know, so he will take care of you." Koplin received a second complaint describing Garcia as "rude and demanding"; this complaint detailed several conversations where she warned that she would rely on Heacox to ensure that the employee no longer worked for Delphi. A final complaint from a third employee, Delphi Warehouse General Supervisor David Mercer, described a "verbal beating" he received from Garcia during two telephone calls. Garcia allegedly threatened to take her concerns to upper management "whenever she encounters an answer she doesn't like."

In March 2011, amidst the ongoing investigation, Penske requested that Garcia return to the office instead of continuing to work from home. Garcia was also removed from the Delphi account at Delphi's request. Specifically, Mark Cashdollar ("Cashdollar"), Delphi's Director of Americas Human Resources, stated in an e-mail in early June 2011 that Delphi would "no longer be requiring Garcia's services." As a result, Penske identified two alternate

No. 15-40061

positions that Garcia was eligible for, both of which would require Garcia to continue to work with Delphi.  However, Cashdollar informed Penske that they no longer wanted Garcia to work with Delphi in any capacity.  Garcia was fired on July 1, 2011.

Garcia filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that Penske terminated her because of (1) her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"); (3) her disability in violation of the Americans with Disabilities Act of 1990 ("ADA"); and (4) her exercise of FMLA leave rights.  Mr. Orlando Lopez ("Lopez"), Garcia's brother, was appointed to represent Garcia before the EEOC.[5]

Garcia filed this civil suit on May 29, 2013 and Penske filed a motion for summary judgment. The district court granted the motion and entered judgment in Penske's favor, finding that Garcia's Title VII, ADEA and ADA claims were untimely.   The district court also found that while Garcia presented sufficient evidence to establish a prima facie case under the FMLA, Penske had a legitimate non-discriminatory reason for Garcia's termination, and Garcia did not provide sufficient evidence that Penske's non-discriminatory reason was merely pretextual.  Garcia timely appealed.  We address each of Garcia's challenges in turn.

II.

We review a district court's grant of summary judgment *de novo*.  *See Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).  Summary judgment is appropriate if "there is no genuine issue as to

---

[5] Lopez is an Equal Opportunity Specialist with the U.S. Department of Housing and Urban Development, and has been in that position since August 1, 2011.  Prior to that, Lopez worked for more than two (2) years as a federal investigator for the EEOC.

any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There is no genuine issue of material fact "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011) (citing *Steadman v. Tex. Rangers*, 179 F.3d 360, 366 (5th Cir. 1999)). In making this determination, we view the facts and inferences in the light most favorable to the nonmoving party. *See Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).

### III.

### A.

The district court correctly determined that Garcia's Title VII, ADEA and ADA claims were untimely. Under Title VII, the ADEA, and the ADA, a plaintiff must exhaust administrative remedies before pursuing employment discrimination claims in federal court. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). For Title VII and ADA claims, "[e]xhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id.* (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996)). A plaintiff must file her civil suit within ninety days of *receipt* of a right-to-sue-letter. *See* 42 U.S.C. § 2000e-5(f)(1) (Title VII claims); *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50 (1984); *see also Dao*, 96 F.3d at 788–89 (ADA claims).

The requirement that a party file a lawsuit within this ninety-day limitations period under Title VII and the ADA is strictly construed. *See Taylor*, 296 F.3d at 379. "[C]ommencement of the ninety-day period begins to run on the day that notice is received at the address supplied to the EEOC by the claimant." *Bowers v. Potter*, 113 F. App'x 610, 612 (5th Cir. 2004). When the date on which the right-to-sue letter was actually received is unknown, the Fifth Circuit follows the presumption that the letter was received three days

No. 15-40061

after the mailing date of the letter. *See Jenkins v. City of San Antonio*, 784 F.3d 263, 266–67 (5th Cir. 2015). This court routinely dismisses untimely claims involving delays after receipt of the right-to-sue letter in the absence of a recognized equitable consideration. *See, e.g., Stokes v. Dolgencorp, Inc.*, 367 F. App'x 545, 548 (5th Cir. 2010) (dismissing a claim that was 21 days late).

The ADEA follows a different administrative exhaustion mechanism. *See Julian v. City of Houston*, 314 F.3d 721, 725 (5th Cir. 2002); *Hawkins v. Frank Gillman Pontiac*, 102 F. App'x 394, 397 (5th Cir. 2004) ("[A]n ADEA plaintiff need not wait on a right-to-sue letter to be issued by the EEOC before he files suit."). Once a plaintiff has filed a timely EEOC charge of discrimination under the ADEA, the plaintiff must wait 60 days before filing a civil action in state or federal court. *See* 29 U.S.C. § 626(d) (ADEA claims); *see also Julian*, 314 F.3d at 726. If the charge is dismissed, the plaintiff *must* file within ninety days of the receipt of a notice of dismissal from the EEOC. *See* 29 U.S.C. § 626(d) (emphasis added).

In the instant case, the Dismissal and Notice of Right-to-Sue letter states that it was mailed on Wednesday, January 23, 2013; an EEOC case log reflects that the letter was mailed on January 24, 2013. The letter was addressed to Plaintiff "c/o Orlando Lopez." It warned that the EEOC planned to close Garcia's file and that any lawsuit must be filed within ninety days of receipt of the notice, or Garcia's right to sue based on this charge would be lost. The letter was delivered to Lopez at the address provided to the EEOC. Prior to receiving this notice, Lopez e-mailed Garcia to inform her that she would be receiving a forthcoming Dismissal and Notice-of-Right-to-Sue. However, because Lopez moved from his residence prior to the letter actually being delivered, he claims that he did not become aware of the letter's existence until after the case was closed. Lopez testified that he could not recall the date the letter was received, had no way of knowing when it was received, and had no

No. 15-40061

documents which could assist him in identifying that date. Garcia also repeatedly testified that she too had no knowledge of when the letter was received.

The date that the dismissal and right-to-sue letter was received is therefore unknown. As such, we must presume that the letter was received within three days after it was mailed. *See Jenkins*, 784 F.3d at 266–67. Taking the later of the two mailing dates, January 24, 2013, Garcia is presumed to have received the letter on January 27, 2013 at the latest. She was therefore delinquent when she filed her complaint on May 29, 2013, more than ninety days after she was presumed to have received the letter.

Garcia contends that there is a genuine issue of material fact concerning when she received the notice. Where a plaintiff can offer evidence to demonstrate that she did not receive the letter within the allotted time, the presumption is overcome. *See Morgan v. Potter*, 489 F.3d 195, 197 n.1 (5th Cir. 2007). Garcia specifically highlights her deposition testimony, where she states that the date the letter was received was "much later" than what the presumption would reflect. However, her testimony related to a FOIA request made to the EEOC, not the right-to-sue letter.

Garcia also improperly relies on *Smith v. Local Union 28 Sheet Metal Workers*, 877 F. Supp. 165 (S.D.N.Y. 1995). In *Smith*, the plaintiff testified that he received the right-to-sue letter on one of two specific dates. *Id.* at 172. The court applied the later date but nonetheless found that the plaintiff's claims remained untimely. *Id.* Unlike the plaintiff in *Smith*, Garcia did not provide even an approximation of when she received the letter. Indeed, it is undisputed that the date of receipt is unknown and cannot be determined. Thus, Garcia has not provided sufficient evidence to rebut the presumption upon which this court must rely. Accordingly, Garcia's Title VII, ADEA and ADA claims were untimely.

No. 15-40061

B.

Garcia's Title VII, ADEA and ADA claims cannot be saved by the doctrine of equitable tolling.  First, this argument is waived on appeal because Garcia did not raise this argument with the district court. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002) ("We note[] 'our long established course of refusing, absent extraordinary circumstances, to entertain legal issues raised for the first time on appeal' and [find] that no extraordinary circumstances existed" to warrant an exception.). Notwithstanding this waiver, a claim for equitable tolling would fail because Garcia has failed to show (1) the pendency of a suit between the same parties in the wrong forum; (2) that she was unaware of facts giving rise to this claim because of Penske's intentional concealment; or (3) that the EEOC misled her about the nature of her rights. *See Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011); *see also Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 233–34 (5th Cir. 1999).

Second, we are reluctant to apply equitable tolling to situations of attorney error or neglect, or where a plaintiff has failed to show that she pursued her rights diligently. *See Granger*, 636 F.3d at 712 (citing *Wilson v. Sec'y Dep't of Veterans Affairs*, 65 F.3d 402, 404–05 (5th Cir. 1995)).  Lopez, as Garcia's representative, neglected to ensure his timely receipt of the EEOC documents mailed to his former address despite his move, and Garcia failed to call the EEOC or Lopez despite being informed that her right-to-sue letter would be forthcoming. *See Williams v. Thompson Corp.*, 383 F.3d 789, 791 (8th Cir. 2004) (concluding that equitable tolling was not warranted where the plaintiff failed to update her address with the EEOC after moving, despite her pending appeal with the EEOC and her awareness that the EEOC intended to issue her a right-to-sue letter.); *Espinoza v. Mo. Pac. R.R. Co.*, 754 F.2d 1247, 1251 (5th Cir. 1985) ("[Plaintiff's] position is that, simply because he was out

8

of town when notice arrived at his home, the equities demand tolling. We heartily disagree."); *Crittendon v. Am. Nat'l Ins. Co.*, 967 F. Supp. 933, 942 (S.D. Tex. 1997) ("Failing to provide the EEOC with a current mailing address, thus jeopardizing the claimant's ability to receive the EEOC's notice of right-to-sue . . . does not justify equitable tolling."). The district court therefore correctly found that equitable tolling is not a proper remedy and that Garcia's Title VII, ADEA and ADA claims were untimely.

IV.

A.

Garcia alleges that Penske terminated her in retaliation for requesting and taking leave under the FMLA due to her disability. The record does not support Garcia's contention.[6] Under the FMLA, a "covered" employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any [FMLA leave] right." 29 U.S.C. § 2615(a). This prohibition extends to employer retaliation for the exercise of FMLA rights. *See* 29 C.F.R. § 825.220(c). Among the rights provided by the FMLA, employees are entitled to "reasonable leave for medical reasons." 29 U.S.C. §§ 2601(b)(2), 2612(a)(1).

Retaliation claims under the FMLA are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001). To survive summary judgment under this framework, an employee must first make a prima facie case of retaliation. *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013). If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to provide a "legitimate, non-discriminatory reason for the employment decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)

---

[6] Garcia's FMLA claim is not subject to a ninety-day limitations period and is reviewed on its merits.

No. 15-40061

(quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).  If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the burden returns to the plaintiff, who must then be afforded an opportunity to rebut the employer's purported explanation with evidence that the reason given is merely pretextual.  *See id.* (citing *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010)).  "A prima facie case coupled with a showing that the proffered reason was pretextual will usually be sufficient to survive summary judgment."  *Hammond v. Jacobs Field Servs.*, 499 F. App'x 377, 380–81 (5th Cir. 2012) (per curiam) (unpublished) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48 (2000) and *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009)).

i.

In order for Garcia to meet the initial burden of establishing a prima facie case under the FMLA, she must show that (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) the adverse action was taken *because* she took FMLA leave.  *Ion*, 731 F.3d at 390; *Hunt*, 277 F.3d at 768.  The first two elements are undisputed.  In analyzing the third element, this court has yet to decide, contrary to Penske's hope, that establishing a prima facie case requires that the plaintiff prove that the adverse action would not have occurred 'but for' the protected activity.  *Medina v. Ramsey Steel Co., Inc*, 238 F.3d 674, 684 (5th Cir. 2001) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)); *Ion*, 731 F.3d at 390 ("We emphasize that we . . . do not[] decide whether . . . a plaintiff [must] prove but-for causation.").  At present, FMLA retaliation claims are analyzed solely by determining whether the discrimination was *a motivating factor* in the adverse employment decision.  *See Richardson* v. *Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).  Regardless, we need not decide

10

No. 15-40061

whether Garcia has established a prima facie case of retaliation under the 'but-for' standard because she has failed to demonstrate a genuine issue of fact regarding whether Penske's legitimate, non-discriminatory reason for firing her was pretextual under the *McDonnell Douglas* framework. Nonetheless, we assume but do not decide that Garcia was able to establish a prima facie case of discrimination under the FMLA.[7]

ii.

Assuming that Garcia has established a prima facie case of retaliation, Penske has provided sufficient evidence of its legitimate non-discriminatory reason for its action—namely, Garcia's conduct and behavior while working with Delphi resulted in Delphi's request to no longer work with her. After Garcia began a romantic relationship with Heacox, Delphi and Penske received multiple complaints that Garcia was using the relationship to threaten and intimidate Delphi employees. As a result, Garcia was removed from the account and Delphi's Director of Americas Human Resources stated that Delphi would "no longer be requiring [Plaintiff's] services." Even with this directive, Penske attempted to identify open positions at Penske that Garcia could fill. However, Delphi informed Penske that they did not want Garcia to interact with Delphi in any capacity. This court has continuously found that customer complaints are legitimate, non-discriminatory reasons for adverse employment actions. *See, e.g.*, *Luna v. Corrections Corp. of Am.*, 469 F. App'x 301, 302-03 (5th Cir. March 16, 2012); *Arrington v. Sw. Bell. Tel. Co.*, 93 F. App'x 593, 598 (5th Cir. Feb 26), *cert. denied*, 543 U.S. 815 (2004).

---

[7] The district court found that Garcia established a prima facie case of retaliation under the FMLA.

No. 15-40061

iii.

Because Penske has established a legitimate, non-discriminatory reason for terminating Garcia, the burden now shifts to the plaintiff to present evidence showing that Penske's proffered reasons for firing her were pretext for retaliation. *See Sanchez v. Dallas/FortWorth Int'l Airport Bd.*, 438 F. App'x 343, 347 (5th Cir. 2011) (per curiam) (unpublished) ("The issue at the pretext stage is whether [the defendant's] reason, even if incorrect, was the real reason for [the plaintiff's] termination") (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002))). To meet this burden, "the plaintiff must produce *substantial* evidence of pretext." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212 (5th Cir.) (emphasis added). "Where the plaintiff fails to produce substantial evidence of pretext, or produces evidence permitting only an indisputably tenuous inference of pretext, summary judgment in favor of the defendant is appropriate." *Read v. BT Alex Brown, Inc.*, 72 App'x 112, 115 (5th Cir. 2003)

First, Garcia contends that comments by Penske employees about her sickness show evidence of pretext. Garcia admits that no one ever expressly stated to her that her firing occurred because she took leave due to her sickness. Instead, Garcia relies on the fact that her supervisor, Mr. Garcia, and Garcia's co-workers made comments to management at Penske and Delphi about Garcia always being sick. Garcia's argument bears little weight. A comment constitutes sufficient evidence of retaliation under the FMLA only if it is: (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. *See Rubenstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000). Comments failing to satisfy these requirements are independently insufficient

to prevent summary judgment. *Jackson*, 602 F.3d at 380. Mr. Garcia's and the co-workers' comments were not proximate in time to the complained-of adverse decision. Although Garcia took leave more than two dozen times over the five years that she made requests under the FMLA, Penske fired Garcia more than two years after these comments were allegedly made. Garcia also presented no additional evidence showing that her co-workers' comments, or Mr. Garcia's comments themselves, bore any weight in Penske's decision to fire her. *See Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 70 (1st Cir. 2002) (Complaints by a co-worker about a plaintiff's "lack of accessibility" caused by her FMLA protected leave do not constitute circumstantial evidence of discrimination because there is no link between the co-workers' complaints and the decision-making process.) In fact, Mr. Garcia never mentioned Garcia's illness or attendance in any of Garcia's required performance evaluations.

Next, Garcia contends that Penske's directive that she return to work, instead of working from home, implies some discriminatory animus. She again has failed to support this argument. The FMLA provides that an employee is entitled to take leave, not to work from home. *Bennett v. Girl Scouts of Ne. Tex.*, No. 4:09-CV-443, 2010 WL 723794, at \*3 (E.D. Tex. Feb. 25, 2010) (citing 29 U.S.C. § 2612). We have also recognized an employer's need to have its employee in the office. *See Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 400 (5th Cir. 2012). The record makes clear that Penske's request to have Garcia work from the office only arose after the start of an ongoing investigation into an issue raised by Penske's customer, Delphi. In fact, despite Garcia's recurring absences, Penske continuously approved Garcia's FMLA leave, after which she resumed her usual job roles and responsibilities. *See Yashenko v. Harrah's NC Casino Co.*, 352 F. Supp. 2d 653, 662 (W.D.N.C. 2005) (finding that the "fact that the Defendant had historically and regularly granted

No. 15-40061

Plaintiff medical leave followed by the full restoration of his employment is evidence that Defendant acted without discriminatory intent" in discharging the employee).  Garcia even admitted that the request that she return to work did not come as a surprise to her because Penske and Delphi placed her under greater scrutiny due to the investigation.  Although Garcia assumes that her firing was in fact retaliation, this subjective belief, without more, is insufficient to cast doubt on Penske's proffered reason for her termination.  *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001) ("This court has consistently held that an employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief.") (citations omitted and internal quotation marks omitted)).

In sum, Garcia has failed to present evidence that raises a genuine issue of material fact that retaliation—and not Delphi's request that she be removed as a result of Penske's investigation—was the real reason for her termination. Therefore, we conclude that the district court correctly granted Penske's summary judgment motion as to Garcia's FMLA claim.

V.

For the reasons stated herein, the district court's grant of summary judgment in favor of Penske is AFFIRMED.

14